UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUENTON DEBERRY,
#252396,

        Plaintiff,                    Civil Action No. 21-cv-10409
                                          HON. BERNARD A. FRIEDMAN
                                          MAG. ELIZABETH A. STAFFORD

vs.

UNKNOWN KALISIK, et al.,

        Defendants.

_____/

**OPINION AND ORDER PARTIALLY OVERRULING DEFENDANT LENNOX'S OBJECTION AND PARTIALLY ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT LENNOX'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND REMANDING MATTER TO MAGISTRATE JUDGE**

This matter is before the Court on defendant Michael Lennox's motion to dismiss, or, in the alternative, motion for summary judgment. (ECF No. 34). Magistrate Judge Elizabeth A. Stafford has submitted a report and recommendation in which she recommends that the motion be granted in part and denied in part. (ECF No. 57). Lennox has filed an objection (ECF No. 59), but plaintiff Quenton DeBerry has not responded and the time to do so has passed. For the reasons stated below, Lennox's objections are overruled in part, and the magistrate judge's

recommendation is accepted in part, and one issue is remanded to the magistrate

judge for further review.

I.  Background

The Court has previously summarized the allegations in the complaint as

follows.

> Plaintiff states that he has a special medical accommodation allowing him to wear his own shoes rather than state-issued oxford shoes. Compl. at PageID.6-7. Plaintiff alleges that on November 3, 2019, defendant Carpenter issued plaintiff a pass allowing him to leave his unit because he had a visitor. *Id.* Plaintiff explained his special accommodation and Carpenter allowed him to proceed. *Id.* Upon arriving at the visiting area, defendant Kalisik allegedly advised plaintiff that, based upon information received from Carpenter, plaintiff had to return to his unit for his state-issued oxfords before he could see his visitor. *Id.* at PageID.7. Plaintiff showed Kalisik his medical accommodation detail and explained that he did not have a pair of oxfords, but she was not persuaded. *Id.* Plaintiff was allegedly given the choice to find a pair of oxfords or forego the visit. *Id.* Plaintiff returned to his unit and borrowed shoes from another prisoner. *Id.* The shoes he borrowed were two sizes too small causing him pain and swelling. *Id.* When the visit concluded, plaintiff complained to a shift commander, who contacted health services. *Id.* at PageID.8. A nurse examined plaintiff's feet and returned him to his unit in a wheelchair. *Id.* Plaintiff filed grievances against Carpenter and Kalisik based upon their refusal to honor his shoe accommodation. *Id.* The grievances were denied, as were the appeals. *Id.* at PageID.8-10.
>
> Next, plaintiff alleges that he was threatened by defendant James Gordon Miller on November 5, 2019, while Miller and defendant Kauser were transporting him from a medical appointment back to prison. *Id.* at PageID.10. During the drive, Miller allegedly stopped the car and told plaintiff that he had heard from Carpenter that plaintiff was causing problems at the prison. *Id.* Plaintiff did not respond. *Id.* Miller then allegedly pointed his gun at plaintiff and said, "you see all that yard back there, I can make sure that your body don't

get found or all I have to say is that I tried to put your leg restraints on you, and you tried to run and I shot you in the back." *Id.* at PageID.11. While continuing to point his gun at plaintiff, Miller allegedly told him: "[W]hen I open my door and get out to open your door you better get out." *Id*. Kauser then grabbed Miller's arm and said they had better leave. *Id.* Miller agreed and plaintiff was returned to the facility.

Third, plaintiff states that he was scheduled for a medical appointment on January 28, 2020. *Id.* at PageID.14. He alleges that he was initially told that he could not wear his medical shoes, so he wore ill-fitting oxfords instead. *Id*. Plaintiff showed his medical accommodation form to the transportation officers and they permitted him to return to his unit to change shoes. *Id.* While he was doing so, defendant Lennox incorrectly told the transportation officers that plaintiff had refused to attend his medical appointment and that they should leave without him. *Id.* Lennox also allegedly confiscated two pairs of plaintiff's medical shoes and filed a false misconduct charge against plaintiff in retaliation for plaintiff's complaints about defendant Miller. *Id.* at PageID.15.[1]

(ECF No. 6, PageID.33-35).  The Court has already dismissed the claims against defendants Kalisik, Carpenter, and Kauser.  (*Id.*, PageID.38).

On June 28, 2022, Lennox filed a motion to dismiss or, in the alternative, motion for summary judgment.  (ECF No. 34).  In it, Lennox assumed that both First Amendment retaliation and Eighth Amendment deliberate indifference claims were still pending against him.  (*Id.*, PageID.136, n.2). Lennox argued that DeBerry had failed to exhaust administrative remedies with regard to his First Amendment retaliation claim, that DeBerry had failed to state an Eighth

---

[1] The Court notes that DeBerry also alleged that the actions were taken in retaliation for threatening to file a grievance against Lennox. (*Id.*).

Amendment deliberate indifference claim, and that Lennox is entitled to qualified immunity.  (*Id.*, PageID.139, 143, 146).

DeBerry filed a response to the motion.  (ECF No. 42).  First DeBerry urged that the grievances submitted effectively notified Lennox of his retaliation claim and that he had sufficiently exhausted his administrative remedies.  (*Id.*, PageID.250).  DeBerry also challenged the notion that he had failed to state a claim for deliberate indifference and he rejected Lennox's claim of qualified immunity.  (*Id.*).  Lennox also filed a reply.  (ECF No. 44).

On November 15, 2022, Magistrate Judge Stafford issued a report and recommendation in which she recommended that the Court grant in part and deny in part Lennox's motion.  (ECF No. 57).  After evaluating the relevant grievance and response, the report found that "Deberry exhausted his claim that Lennox retaliated against him by confiscating his shoes but did not exhaust the claim that Lennox retaliated by falsely telling transport officers that he refused to go to his appointment."  (*Id.*, PageID.395).  With regard to the claim that Lennox had retaliated against DeBerry by giving him two misconduct tickets, the report found that "a retaliatory misconduct claim cannot be exhausted through the grievance process" but instead must be challenged through a hearing.  (*Id.*, PageID.396).  Magistrate Judge Stafford stated that because Lennox had not addressed whether

4

retaliation was raised at misconduct hearings, he had not carried his burden on this exhaustion defense.  (*Id.*).

The report then turned to Lennox's qualified immunity arguments. Magistrate Judge Stafford first found that Lennox was entitled to qualified immunity with regard to DeBerry's Eighth Amendment claim of deliberate indifference because he could not demonstrate that a constitutional right was violated as he had not alleged facts consistent with a substantial risk of serious harm.  (*Id.*, PageID.398-401).

Then the report considered Lennox's argument that DeBerry cannot state a plausible First Amendment retaliation claim because DeBerry was not engaged in protected conduct.  (*Id.*, PageID.401).  Noting that the alleged protected conduct referred to grievance filing rather than wearing medical shoes offsite in violation of prison regulations, Magistrate Judge Stafford characterized Lennox's argument as one relating to causation.  (*Id.*, PageID.401-403).  The report found that a question of fact existed as to whether the challenged actions were done in retaliation or because DeBerry had violated a regulation.  (*Id.*, PageID.403-04).  Magistrate Judge Stafford found that DeBerry had sufficiently pleaded this retaliation claim. (*Id.*, PageID.404).

Finally, Magistrate Judge Stafford rejected Lennox's arguments that he is entitled to qualified immunity because the conduct alleged does not violate a

clearly established First Amendment right as required under a qualified immunity analysis.  (*Id.*, PageID.404-05).  Instead, the report pointed to cases finding that it is clearly established that filing of a false misconduct report or retaliatory confiscation of an inmate's legal papers and other property can give rise to a First Amendment retaliation claim.  (*Id.*, PageID.405).

Consequently, Magistrate Judge Stafford recommended that this Court dismiss DeBerry's Eighth Amendment claim for deliberate indifference and First Amendment claim for retaliation based on Lennox's alleged statements to transport officers.  (*Id.*, PageID.405-06).  But the report also recommended that DeBerry's First Amendment retaliation claims premised on Lennox's confiscation of his medical shoes and false misconduct tickets should proceed.  (*Id.*, PageID.406).

Lennox has now filed the instant objection to the November 15, 2022, report and recommendation.  (ECF No. 59).  Lennox raises four arguments, each of which will be addressed in turn. A district court reviews de novo the portions of a report and recommendation to which proper objections have been filed.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

II.   Analysis

a.  First Objection

First, Lennox urges that the report incorrectly found that DeBerry exhausted a retaliation claim against Lennox.  (ECF No. 59, PageID.420).  Lennox argues

that "while Plaintiff's administrative grievance put the MDOC [Michigan Department of Corrections] on notice of an Eighth Amendment claim related to the confiscation of medical shoes, the grievance did not put the MDOC on notice that it should investigate an allegation of retaliation by Lennox." (*Id.*).  In support, Lennox cites *Dock v. Wilson*, No. 17-11421, 2018 WL 5095053 (E.D. Mich. Aug. 16, 2018), in which the court found that plaintiff had abandoned claims not properly identified in grievances.

Magistrate Judge Stafford found that only one claim was exhausted: the allegation that Lennox took DeBerry's medical shoes in retaliation for his complaint against Miller.  (ECF No. 57, PageID.393).[2]  This Court agrees with Magistrate Judge Stafford that DeBerry's grievance provided sufficient notice of this claim.  The grievance unequivocally alleges: "Officer Lennox made me take my medical shoes off on base of 1 block to harass, humiliate [sic], as retaliation for his friend, and to cause me physical pain." (ECF No. 34-2, PageID.172).  The grievance also includes other allegations that, after confiscating his shoes and within the same series of events, Lennox made veiled references to DeBerry's

---

[2] By contrast, Magistrate Judge Stafford found that DeBerry had *not* exhausted his claim that Lennox retaliated against him by falsely telling transport officers that he refused to go to his appointment.  (*Id.*, PageID.395).  And with regard to the allegation that Lennox gave DeBerry two retaliatory misconduct tickets, Magistrate Judge Stafford found that such a claim could not be exhausted through the grievance process.  (*Id.*, PageID.396).

pending meeting with the Michigan State Police regarding DeBerry's complaint against Miller. (*Id.*). That the Michigan Department of Corrections understood this to be a grievance for retaliatory conduct is indicated in the Department's response. "Prisoner DeBerry was not harassed." (*Id.*, PageID.171). DeBerry sufficiently exhausted his claim that Lennox retaliated against him by confiscating his shoes. This objection is overruled.

### b.  Second Objection

Second, Lennox urges that the report incorrectly found that DeBerry had exhausted a retaliation claim pertaining to false misconducts because Lennox failed to produce the underlying misconduct reports. (ECF No. 59, PageID.423). As indicated above, Magistrate Judge Stafford found that "a retaliatory misconduct claim cannot be exhausted through the grievance process" but must instead be challenged by raising it at the misconduct hearing. (ECF No. 57, PageID.396). Because Lennox had not addressed whether this was raised at the misconduct hearings, the report found that Lennox had not carried his burden of proving the exhaustion defense. (*Id.*).[3]

Lennox first rejects the report's conclusion that a retaliatory misconduct claim cannot be exhausted through the grievance process. (ECF No. 59,

---

[3] That is: the report did not find that DeBerry had exhausted the claim. Rather, it found that Lennox had not carried his burden on this affirmative defense to show that DeBerry had *not* exhausted the claim.

PageID.424).   Instead, Lennox states "[g]rievances alleging improper conduct of an MDOC employee, including grievances alleging retaliation, are explicitly allowed to be exhausted under the MDOC's normal three-step grievance process." (*Id.*, PageID. 424-25) (citing ECF No. 34-3, PageID.192, ¶ R). Noting that the Step I grievance makes no mention of Lennox issuing retaliatory misconducts, Lennox urges that DeBerry did not exhaust this claim through the grievance process.  (*Id.*, PageID.423-25).  The Court agrees that DeBerry did not exhaust this claim through the grievance process, as the grievance pertaining to Lennox does not mention that any "misconducts" had been filed against DeBerry, in retaliation or otherwise. (ECF No. 34-2, PageID.172).

Magistrate Judge Stafford's report, however, found that "the only avenue for exhausting a retaliation claim stemming from a misconduct ticket is by raising it at the misconduct hearing"; she thus rejected Lennox's exhaustion argument on this point for failure to demonstrate what had been raised at the hearings.  (ECF No. 57, PageID.396) (cleaned up).  Lennox disputes the report's conclusion that this is the "only avenue" for challenging an allegedly retaliatory misconduct ticket, instead providing an alternate reading of the relevant policy directive and cases cited. (ECF No. 59, PageID.424-26).[4]  But the Sixth Circuit has recently reiterated this

[4] He also urges that the cases cited in the report "addressed prior versions of MDOC's grievance procedures, but did not address Policy Directive 03.02.130, which went into effect on March 18, 2019, and which is at issue in this case." (*Id.*,

9

rule.  *Rush v. Newcomb*, No. 19-2013, 2020 WL 5270438, at *2 (6th Cir. July 8, 2020); *Kinard v. Valone*, No. 19-1790, 2020 WL 4044991, at *2 (6th Cir. May 15, 2020) (acknowledging existence of earlier caselaw to the contrary but upholding rule).   The report is correct that the only avenue for challenging allegedly retaliatory misconduct tickets is in a misconduct hearing.

Nevertheless, because the report raised this issue sua sponte, and because Lennox has now provided some documents related to the underlying misconduct charges and appeals, (ECF No. 59, Exs. A, B), the Court will remand this issue to the Magistrate Judge for further review.  28 U.S.C. § 636(b)(1) (a district judge may "recommit the matter to the magistrate judge with instructions"); Fed. R. Civ. P. 72(b)(3).  Magistrate Judge Stafford is requested to determine whether DeBerry properly exhausted, in the course of the misconduct hearings, his claim that Lennox retaliated against him by filing misconduct reports.

c.  Third Objection

Third, Lennox argues that he is entitled to qualified immunity on the retaliation claim and objects that the report "fails to address the second element" of a retaliation claim.  (ECF No. 59, PageID.430).

Magistrate Judge Stafford's report outlined the two prongs of a qualified immunity analysis: whether a constitutional right has been violated and whether

PageID.426).  Lennox does not explain, however, how any earlier versions of the policy were meaningfully different from the version he asserts is relevant here.

that right was clearly established.  (ECF No. 57, PageID.398).   The report later

outlined the three elements of a retaliation claim: that plaintiff was engaged in

conduct protected by the First Amendment, that an adverse action was taken

against plaintiff that would deter a person of ordinary firmness from engaging in

that conduct, and that the adverse action was motivated at least in part by the

protected conduct.  (*Id.*, PageID.402).   Lennox now objects that the report did not

address the existence of an adverse action that would deter a person of ordinary

firmness from engaging in the protected conduct.  (ECF No. 59, PageID.430-31).

> Where confiscation of medical shoes is not sufficiently serious to
> qualify as the basis of a constitutional violation, where Lennox was
> merely enforcing a valid prison policy, and where Plaintiff persisted
> in filing numerous grievances *and* continued to wear unauthorized
> medical shoes after Lennox allegedly took adverse action against him,
> it is hard to see how Lennox's actions were sufficient to deter a person
> of ordinary firmness from engaging in protected conduct.

(*Id.*, PageID.431) (cleaned up).

The adverse action alleged here is the confiscation of medical shoes and

issuance of false misconduct tickets.  (*See* ECF No. 57, 59, PageID.403, 430).  The

question raised in this objection is whether those two actions would deter a person

of ordinary firmness from engaging in the protected conduct.

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999), the Sixth

Circuit discussed at length various instances in which an adverse action might be

found and concluded that "while certain threats or deprivations are so de minimis

that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." Behavior constitutes an adverse action, in satisfaction of the second prong of a retaliation claim, if "it is capable of deterring a person of ordinary firmness" from engaging in the protected conduct. *Id.*

With regard to the confiscation of medical shoes, Magistrate Judge Stafford's report identified multiple cases in which confiscation of property supported a retaliation claim. (ECF No. 57, PageID.405). Of particular note is the Eleventh Circuit case of *Hall v. Sutton*, 755 F.2d 786, 787 (11th Cir. 1985), in which that court found that the prisoner had pleaded a plausible retaliation claim based on the alleged confiscation of his tennis shoes. *See also Bell v. Johnson*, 308 F.3d 594, 604-05 (6th Cir. 2002) (deeming persuasive cases from other circuits which found that confiscating an inmate's property could support a retaliation claim, specifically identifying *Hall*, and holding that plaintiff had met his burden of showing adverse action where defendants allegedly confiscated legal papers and medical diet snacks). Like tennis shoes and other medical items, this Court cannot say that alleged confiscation of medical shoes does not constitute an adverse action

that would deter a person of ordinary firmness from engaging in protected conduct.[5]

With regard to the misconduct tickets, the Sixth Circuit has said: "[w]hen deciding whether the issuance of a misconduct ticket rises to the level of an adverse action, we look to both the punishment [DeBerry] could have faced and the punishment he ultimately did face." *Maben v. Thelen*, 887 F.3d. 252, 266 (6th Cir. 2018). Here, as Lennox acknowledges, DeBerry lost a total of nine days of privileges as a result of the misconduct tickets. (ECF No. 59, PageID.437). "[T]he deprivation of privileges is hardly 'inconsequential' – indeed, they are all that the prisoners really have." *Maben*, 887 F.3d at 267 (acknowledging contrary finding in *Ingram v. Jewell*, 94 F. App'x. 271, 273 (6th Cir. 2004), but relying on other cases to conclude that it is for the factfinder to decide whether deprivation of privileges is a sufficient deterrent to be actionable); *see also Graham v. Chicowski*, No. 18-2049, 2019 WL 4381841, at *3 (6th Cir. May 3, 2019) (identifying recent

---

[5] Although Lennox points out that the report found that deprivation of medical shoes does not constitute a constitutional violation, "[i]t is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Thaddeus-X*, 175 F.3d at 386. And although Lennox notes that DeBerry filed grievances and wore unauthorized shoes after Lennox allegedly took adverse action against him, "the adverseness inquiry is an objective one, and does not depend upon how the particular plaintiff reacted." *Bell*, 308 F.3d at 606. Lennox offers no further arguments for the Court's consideration as to how enforcement of valid prison policy would affect an adverse action analysis in this case, and the report already addressed this contention. (*See* ECF Nos. 57, 59. PageID.402-03, 431)

cases in which that court had held "that restricting a prisoner's privileges and freedom of movement within the institution is an adverse action for purposes of establishing the second element of a retaliation claim").  This Court cannot say that the issuance of misconduct tickets, which here actually resulted in the deprivation of privileges, would not deter a person of ordinary firmness from engaging in the protected conduct.

This objection is overruled.

d.  Fourth Objection

Finally, Lennox objects to Magistrate Judge Stafford's finding that he was not entitled to qualified immunity on the second prong of the test, arguing that no cases were offered showing that Lennox's conduct violated clearly established law. (ECF No. 59, PageID.432).  Again, here, there are two types of conduct at issue: alleged retaliation by confiscating medical shoes, and alleged retaliation by filing false misconduct charges.

With regard to the confiscation of shoes, Lennox first challenges the report's reliance on *Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002), and *Riley v. Contu*, 172 F.R.D. 224, 227 (E.D. Mich. 1997), urging that they "both pertain to confiscation of legal materials," which, Lennox says, "is a more serious issue." (ECF No. 59, PageID.433).  *Riley* addressed legal papers.  But as has already been discussed above, *Bell* first examined with approval cases from other circuits in

14

which confiscation of property, from legal papers to tennis shoes, was sufficient to support a retaliation claim.  *Bell*, 308 F.3d at 604.  And, contrary to Lennox's assertion, *Bell* itself addressed not only legal property but also medical items.  "[A] reasonable official would have been aware that . . . confiscating an inmate's . . . medical dietary supplements in retaliation . . . would give rise to constitutional liability."  *Id.* at 612.

Lennox then takes issue with the report's citation of *Hall v. Sutton*, 755 F.2d 786, 787 (11th Cir. 1985), urging that the "out-of-circuit, nearly 40-year-old case does not address qualified immunity at all, accepts in dicta that confiscation of tennis shoes could plausibly serve as the basis of a retaliation claim, and is not sufficient."  (ECF No. 59, PageID.434).  But the Sixth Circuit has cited *Hall* with approval in a discussion of qualified immunity.  *See Bell*, 308 F.3d at 612.

The Sixth Circuit has also already unequivocally stated that false filing of a misconduct charge violates clearly established law.  *Maben*, 887 F.3d at 269-70.  A "reasonable prison officer would have been aware that issuing a misconduct ticket, even a minor misconduct ticket, in retaliation for the inmate's exercise of his First Amendment rights could give rise to constitutional liability."  *Id.* at 270.  Further, the Sixth Circuit cautioned against a "preoccupation with MDOC's label of major and minor misconduct."  *Id.*  Lennox's attempts to distinguish, on the basis of the

possible penalties, the Class II misconducts of *Maben* from the Class III misconducts in this case are unavailing.  (ECF No. 59, PageID.435-37).

This objection is overruled.

III.    Conclusion

This Court generally agrees with the November 15, 2022, report and recommendation of Magistrate Judge Stafford to grant in part and deny in part Defendant Lennox's motion to dismiss or for summary judgment.  (ECF No. 57). However, the issue of whether DeBerry exhausted, in the misconduct hearings, his claim that misconduct tickets were issued against him in retaliation, is remanded to Magistrate Judge Stafford to consider in the first instance.  Accordingly,

IT IS ORDERED that Lennox's objection to the November 15, 2022, report and recommendation (ECF No. 59) is OVERRULED except with regard to the portion of his objection that addresses the exhaustion of DeBerry's claim of retaliatory misconduct tickets.

IT IS FURTHER ORDERED that Magistrate Judge Stafford's November 15, 2022, report and recommendation (ECF No. 57) is hereby accepted and

adopted as the findings and conclusions of the Court except with regard to the conclusion that Lennox had not addressed whether DeBerry raised retaliation during his misconduct hearings and had not carried the burden of proving his exhaustion defense on this claim.

IT IS FURHTER ORDERED that Lennox's motion to dismiss or for summary judgment (ECF No. 34) is granted in part and denied in part. Specifically, DeBerry's Eighth Amendment claim and retaliation claim based on Lennox's alleged statements to transport officers is dismissed.  But DeBerry's retaliation claims premised on Lennox's confiscation of his shoes will proceed.

IT IS FURTHER ORDERED that Magistrate Judge Stafford shall determine, in the first instance, whether DeBerry has exhausted, during the misconduct hearings, his claim of retaliatory misconduct tickets.

**IT IS SO ORDERED.**

s/Bernard A. Friedman
Dated: December 28, 2022                    Bernard A. Friedman
    Detroit, Michigan                       Senior United States District Judge

17